This is case number 4-14-0628, County of McLean v. States Self-Insurers Risk Retention Group. The attorney, Bryce, is here on behalf of the appellant. And attorney, Rob, is here on behalf of the appellee. Mr. Rice, are you ready to proceed? Good afternoon, and may it please the Court. Good afternoon, Counsel. My name is Dana Rice, and I represent the appellant, States Self-Insurers Risk Retention Group. Your Honors, States respectfully requests that this Court reverse the judgment of the Circuit Court and enter judgment in favor of States for two principal reasons. The first is that the Circuit Court erred when it determined that the first district's decision, security mutual, was finding precedent, and then relied on that decision to conclude that the trigger for a malicious prosecution claim is the date a criminal defendant is exonerated. The second principal reason is that because in determining that there was coverage available under the State's policy, the Circuit Court ignored the plain language of the policy before it and determined that the definition of an occurrence, which our policy clearly defines in terms of personal injury as the first offense to give rise to injury, they ignored that plain language in determining that claim again, the trigger, was exonerated. So in terms of the first basis, and that is that the Circuit Court improperly relied on the first district's analysis and security mutual, as this Court is aware, the Supreme Court reversed that decision in 1979, and in doing so, rendered all of the first district's analysis with respect to the triggering event of coverage basically at best an advisory opinion. We contend that that decision is not finding precedent on this Court, and it's not finding precedent in Illinois. In fact, two second district opinions have noted that fact, most recently in 2014, and the decision of Indian Harbor, excuse me, that was a 2015 decision. The Court recognized that the Supreme Court, in reversing the decision in security mutual, the first district decision, rendered that analysis irrelevant as it relates to malicious prosecution, and in doing so, sided with the majority of courts in the country that have found that for purposes of malicious prosecution, the triggering event is the date of the initial arrest and incarceration, and not the date of the exoneration. And that's significant because in doing so, the Court recognized that what insurance policies cover is injurious acts or injury that results from conduct. And for claim for malicious prosecution, all of the injurious conduct that took place, took place back at the time of the arrest and wrongful incarceration in the prosecution, and not the time when the criminal defendant is ultimately released from prison and exonerated. So, Supreme, again, excuse me, the second district recognized that fact, and decided not to do what the first district had done in security mutual, was try to impart the principles and elements of tort into an analysis of whether or not  So, the circuit court, by relying improperly on the first district's decision, and quite frankly, that was the gist of the circuit court's decision, was that security mutual controlled and that security mutual dictated the result that the court found. That's simply not the case. In fact, up until that time, there was no binding precedent, really, in the state of Illinois, that governed malicious prosecution claims. Every court in the Seventh Circuit, or in the federal court, continued to rely on security mutual as that kind of guiding principle, but that just wasn't binding precedent. So we had the succession of bad decisions, quite frankly, that rested on a principle that didn't exist in Illinois. So, setting aside security mutual for the moment, the position that's advocated by states is that our particular policy, and the policy language that we have, requires that in order for there to be a covered occurrence, there must be personal injury. Well, let me step back for a moment. What our policy covers is we cover damages that result from a personal injury that results from an occurrence during the policy period. We define occurrence in our policy uniquely, in some sense. We say that for any claim for personal injury, the date of the occurrence is the date that the first offense took place, or is alleged to have taken place. Then we provide a list of the types of personal injury for which we provide coverage. Now, included in that list is false arrest, wrongful detention, malicious prosecution. We also have a second category, any act which may give rise to liability under a federal civil rights statute. Now, what the Circuit Court failed to do in rendering its decision, was take note that if either of those definitions of personal injury were satisfied, the claim for an occurrence purpose would have related back to 1994 and 1995, when Mr. Beamon was arrested and incarcerated, not the date of exoneration. But the Court was focused so exclusively on the malicious prosecution claim, and again, on the security mutuals analysis, the First District's analysis, that it just ignored the plain policy language, and went right to the conclusion that for malicious prosecution, the exoneration is the triggering event, and that happened during your period. And so, ergo, you owe coverage for the loss. Now, the malicious prosecution claim and the civil rights violations claims are two separate claims. Is that correct? That is correct, Your Honor. And there's coverage for both under the policy, if the dates of the occurrence, or do you have to pick between the two of them, I guess is what I'm getting at. No, Your Honor. For our purposes, there is no coverage for either, because the events giving rise to those two respective claims occurred before our policy period. However, both of those claims could be covered if, for example, the wrongful acts giving rise to those claims, the false arrest and incarceration, occurred during our policy period, but they didn't. And so, and what our policy goes on to define further is to say that if you have a series of offenses, of personal injury, the date of the occurrence for purposes of coverage is the date the first offense takes place. And in this case, the acts giving rise to the federal violations happen to be elements to the same offense that gives rise to malicious prosecution. It's the false, well, the false arrest and incarceration happen to overlap in some sense with those. What really happened with the federal violation acts is that the state allegedly withheld exculpatory evidence from the defendant during the prosecution. And so, our position is that based on our definition of personal injury and occurrence, it's the first of those offenses to have taken place is the triggering event for our coverage. And that happened back in 1994 or 1995, depending on which state you pick. As a practical matter, under your theory then, the policy that was in effect at the time he was arrested and then incarcerated is the policy that would give coverage, if any. Does a county have to buy a tail, I assume, or something like that to maintain coverage? Because here we are X number of years later when the malicious prosecution action basically arises because he's exonerated. No, Your Honor. And this is an important distinction that I think the circuit court also wrestled with a little bit. And that is there are two types of policies, generally speaking, in the industry. You have an occurrence-based policy, which covers an event that takes place. And you have a claims-made policy, which covers a claim being made. And what Your Honor speaks to about a tail extension is really a product that goes along with the claims-made policy because traditionally a claims-made policy only covers a claim that is first made against the insured during the period  Now an insured can buy a tail to extend the reporting process so that they can comply and have coverage in that window. But an occurrence-based policy, like the one that State's issued, covers just an event or act that happens that results in injury. And no matter when the claim manifests down the road and is actually made against the insured, we have locked in a window of time where the coverage is available. So as long as the injurious act happens during that window of time, the insured can notify the carrier and put them on notice and activate the coverage, whether it be through a duty to defend or a duty to indemnify, that policy in play at the time of the event. But does the occurrence policy have to be in effect at the time? It has to be in effect at the time of the wrongful act or occurrence, but not at the time of the claim is made. Okay, so who insured McBain County back in 1993-94? I do not know, and I'm not sure if they may have been self-insured to some degree. I don't know. But the majority of courts that have analyzed this issue have come to that very conclusion, that it is the insurance companies on the risk at the time of the arrest and incarceration that are the policies that respond to this loss. And they've come up with a number of reasons why they've reached that conclusion. And admittedly, if you try to parse through all of the different policy language that's out there, try to come up with some systematic principle, it's very difficult, because policy language just varies so much from policy to policy. But what is consistent is that courts that have interpreted policy language like ours say that it covers an injury. And the only injurious conduct that happened to Mr. Beaman is when he was arrested and incarcerated and sentenced to 50 years in prison. When he got out of jail, the last element that completes the tort of malicious prosecution arguably was a good day for him. And it started the remediation process, the remedial process for him to start to seek redress for those bad acts that happened way back when in 1994. But the insurance policy that we issued doesn't cover that event. It uncovers the injury, and the injury again took place back in 1994-95. In terms of one of the things that the appellees have argued is that the policy language in our policy changed about two years after the policy had issued. And they make a big deal about that because they suggest that by doing so, it evidences that the policy we issued is ambiguous, that it meant something different. As we've outlined in our argument in our briefs, that is the wrong analysis because principally what we have to first determine is whether or not the policy we're talking about is ambiguous to begin with. Because what an insurance company does two years down the road to modify a language is of no import as to whether or not the language before the court is ambiguous or not. We posit that the language is not ambiguous, it's clear, and under Illinois principles, has to be applied as written. And so this argument about changing and modifying the language, again, as we've advocated before, that happens, but it's not indicative of an ambiguity. In fact, the court can't look to it as an ambiguity unless and until it finds an ambiguity on the face of the policy itself. I wanted to spend just a few moments talking about, again, why the circuit court's judgment should be reversed as it relates to the failure to look at the policy language that we have. And again, it's important to note that we're not solely focused in our language just on the malicious prosecution claim. And what I mean by that is even if this court were to determine that the security mutual analysis from the First District is the right analysis and that we need a completed tort of malicious prosecution before we have an event giving rise to coverage under your policy, we would still have a basis to prevail in this case because of our definition of personal injury, which we go on to define to say any acts which give rise to a violation of federal civil rights. So again, because we have these separate definitions of personal injury, we prevail under one or the other, even if the malicious prosecution claim required all of the elements to be completed. And again, we are not advocating that position. We are advocating that for malicious prosecution, the trigger is the date of incarceration and arrest, not the date of exoneration. But again, it's important to note that our policy language is different and that it allows us another opportunity to say why this claim is not covered. In terms of the Second District, again, we've had two decisions now in the last couple of years, both of which have reached the same conclusion, which is the claim for malicious prosecution does not trigger coverage under the policy in effect at the date of exoneration. Now, admittedly, the two policies in that case had slightly different language from each other, but we would posit that our language is closer to Indian Harbor because, again, Indian Harbor's language talks more about the injury and when does the injury occur. And that's the same way we really define our policy as well. And again, the injury occurs for malicious prosecution back at the time of incarceration and arrest. It's also important to note that in both decisions, the Second District did take an opportunity to distinguish and explain why the Seventh Circuit's analysis in the American states, for City of Waukegan and McFatridge and Northfield, why all of those decisions were incorrect. And the general principle that can be gleaned from that is that all three of those cases relied impermissibly on security mutual. And so, in and of itself, that's a problem because that's not the state of the law. In addition, in McFatridge, the courts really didn't focus on the policy language before them, which the Second District said is really important. We have to look at what the policies say. It's not a one-size-fits-all position. We have to look at what the insurance company expected to insure. And for those principal reasons, McFatridge and City of Waukegan and Northfield, they're just not, obviously not binding precedent in this court to begin with, but they're just not persuasive because they're just founded on principles that are inconsistent with Illinois law. I want to just, at the risk of sounding repetitive, I do want to just hammer home one last policy consideration for the court, and that is this argument that placing the insurer on the risk at the time of the exoneration is the more appropriate thing to do because it is likely to be an insurer that has more assets available to them. They are less likely to be insolvent at that time. They may have higher limits available at that time. Respectfully, that's not the proper analysis. It's not helpful to have a system like that because it's not... The insurance company, again, is issuing a policy to cover injury. And again, no injury happens at the time of exoneration. And so to ignore that fact just because the insurance company may have a higher limit, maybe more solvent, is not the right analysis. But the right analysis is to put the insurance company that insured the risk at the time of the bad acts, the wrongful acts, to have to pay under that policy provided that the claim is meritorious. And admittedly, there are going to be circumstances in which that insurance company may not have the same limits as an insurance company 50 years later, 30 years later. And it may be that the insurer finds obstacles to tendering that claim, whether it be locating the insurance company, et cetera. But that is not a reason to convert in a policy like ours that does not provide coverage into providing for this case. And unless the court has any other questions, I will deal with the rest of my time. I don't see any. Thank you, counsel. You have a chance at a rebuttal. Thank you, Your Honor. Mr. Robb. Thank you. May I please report to the counsel? Yes, counsel. In reviewing the various cases on this topic over the last few days, what struck me is a lot of the cases seem to get sometimes so involved with their own analysis of the legal points involved, they forget the proof test that ought to be applied here. What would a reasonable insurer, having this policy in place, believe his coverage to be if he received the suit papers that he got from Mr. Beamon in this case? In this case... Wasn't this an insurance policy that was bought just a few years ago? This was an insurance policy. Correct. I believe it went into effect... So the county of McLean should think that we're buying an insurance policy a few years ago that's going to insure us for the alleged wrongful conviction of Alan Beamon 12 years earlier? Well, that's because of how the policy defines coverage. The policy in this particular case defines coverage on the basis of offenses. This is a very distinguishing factor from a number of other cases which defines coverage on the basis of acts. If this policy defines coverage on when an act occurred, we wouldn't be here arguing. Some of the acts obviously occurred well before the policy period. Well, counsel, what about the policy language that expressly provides that coverage is triggered by the first injurious act? That is, in context, extremely vague. What act, by whom... Would you say that again? In context, it's what? It's extremely vague. The first act, does that mean that the first wrongful act committed by any insured person against anyone is a trigger for all coverage? Well, what were the wrongful acts in this case? It seems unlikely that the wrongful act would be, as counsel pointed out, when it was determined he was not guilty or shouldn't have been jailed. That's the only thing that happened during the time of the exact coverage here, wasn't it? But that's when the offense or tort became complete, Your Honor. Does the policy talk about when the tort is... The policy doesn't talk about that, does it? It doesn't use those terms, Your Honor. It does define the coverage on the basis of offenses. An offense would be, in my construction of that language, not an act. What language are you referring to? I'm referring to the Section O, where it says, caught by one or more of the following offenses, and then it lists one through five of the various types of offenses it covers, which includes malicious prosecution in Section I. It also covers things like wrongful eviction, libel and slander. So various conduct that is covered under this policy. Various offenses, but the policy uses the language offenses. I think it's important to remember the insurance company gets to choose the language. If they wanted to insure only acts, they could have drafted the language to make clear they're only covering acts within the policy period, not offenses. In fact, this very issue was addressed in the two more recent Second Circuit decisions that counsel discussed. In the Indian Harbor v. City of Waukegan, it was, well, let me go to the first case, which was the St. Paul Fire and Marine v. City of Zion. In paragraph 32 of that decision, the court specifically held that they may reach a different result had the policy defined the occurrence as the tort rather than the wrongful act. In the City of Zion case, this was construing a police liability policy which spoke in terms of a wrongful act which occurred in the policy period. Policy here uses the term offense. That is different than an act. And that's why the term offense is reasonably interpreted to include not only the original acts, but the entire tort of militia prosecution, which clearly did not ripen until exoneration. Isn't the key term in the insurance policy personal injury, which covers various aspects of it? What were you referring to, Your Honor? I'm referring to Section 4, finding personal injury caused by one or more of the following offenses. And that's, it says injury other than bodily injury or property damage caused by one or more of the following offenses. So in order to have coverage, you need two things to coexist. Well, with respect to occurrence and respect to personal injury, only the offense is defined under personal injury. Correct, Your Honor. Then personal injury becomes the term, doesn't it, as they're using it? Correct, Your Honor. Right, it incorporates that term. But then you go to Section O of the policy, which defines personal injury, which requires for coverage to take place, there'd be a coexistence of injury and offense. So even if the court would hold or believe that the injury occurred when the original wrongful arrest or wrongful prosecution made, the offense did not take place until Mr. Beaumont was exonerated in the underlying case. Again, the insurance carrier chose their language. They could have chosen simply to insure acts. They, in this case, chose to insure offenses. And the offense is different than an act. Do we disagree with your interpretation of offenses? Do you lose? If the court reads offenses to be an act, then you lose. Well, it seems like offenses is not what the focus of the policy is. They're just talking about that as an aspect of personal injury, and then they define personal injury further. Well, it speaks in terms of offenses, and then it lists various causes of action, false or wrongful arrest, a malicious prosecution. These are all torts. So from the point of view of the insured, do you think when they subscribed for this policy two years ago, they thought they were going to be covering claims brought by Alan Beaumont from 12 years earlier? I don't know when they took this policy that any thought was given to Mr. Beaumont having a claim he was still in prison. Well, there was a lot of publicity about it at the time. People in McLean County could not have been surprised. Well, whatever was in the minds of the people purchasing the policy is certainly not on the record, and I simply don't know what they think. Well, you just referred to it, though, about how we need to look at it from the point of view of McLean County. Right, as a reasonable insured looking at the policy. Yeah, if you're phrasing that term, yes, I think they could view the offense of wrongful or, excuse me, of a malicious prosecution as requiring exoneration. Are you trying to distinguish, then, this case from the recent Second District decision? I am, Your Honor. I think they distinguish themselves. Again, in the City of Zion case, that case defined the occurrence in terms of acts. And the same is true of the later case, the City of Waukegan case. It defined the liability in terms of a wrongful act which occurred during the policy period. Again, Your Honor, the clear rule in interpreting insurance policies is that any ambiguity in the policy must be read in favor of the public. The Second District said that the malicious prosecution injury in that recent case happened when the plaintiff was arrested and prosecuted, not when he was exonerated. Under the terms of that policy, they were correct because... Well, they talk about the injury. But the court also... Isn't the injury what's at issue in this case? The injury plus the offense is what is at issue in this case based on the policy language. You have to have both, Your Honor. And the fact is the City of... I think it was the City of... Excuse me, the earlier case, City of Zion, cautioned and toward the end of their opinion, and I believe that is in paragraph... I don't have the paragraph number. But they cautioned against... Oh, it's in paragraph 34. Cautioned against using these general rules or trying to set general rules about when malicious prosecution occurs and clarified or emphasized that what a court is obligated to do is to compare the policy language to the allegations of the complaint and determine whether or not there's coverage. In this case, we're only addressing the duty to defend. The bar is much lower in securing coverage for a duty to defend than for a duty to indemnify. The mere possibility of coverage is sufficient to trigger the duty to defend. More is required for a duty to indemnify. Counsel's argued that the change in the policy language is nothing. It shouldn't be considered by the court. But when the change in the policy language fixes the problem, great in this case, I think the court can take that as clear evidence of ambiguity. Why should that be? Why shouldn't the lawyers just figure, you know, we're going to have this scrapola argument be made about our policies. Let's avoid that. Does that make sense? Does that somehow indicate that there's a legitimacy to the argument being made? Well, what they're doing is just careful. They're trying to clear an ambiguity. It wasn't trying to do. Well, it seems to me that whether there is an ambiguity or not shouldn't be the question from the point of view of the insurance company. They should try to avoid any colorable claim or claims that aren't even colorable if they can fix the policy by doing it. Isn't that just good practice? But they also should fix ambiguity so the insurer will know when. But you're assuming that a modification means there had to be an ambiguity. Isn't that your argument? It's my argument that it's evidence that ambiguity exists, especially when it fixes the very problem that arises in this case. It makes clear that a related series of offenses is the trigger, and that's the big problem in the language of the policy that did exist. The insurance company wants to read the policy that did exist as if it contained in the language a related series of events. That isn't in the language we're construing. The language we're construing is hopelessly vague because it doesn't say first offense of what, by whom, against whom. They may well have intended that language to mean the first of a series of related offenses, but they didn't include it in the policy. And that's why it's ambiguous. That's why it was fixed. And that's why this court can find that action on behalf of the insurance company is clear evidence of ambiguity. And, of course, if an ambiguity exists, coverage must be found. I realize, Your Honor, that public policy considerations alone could not change the wording of policy. But if a policy is vague and unclear, I think the court can take into account public policy issues. Let me pose what may happen if we follow the defendant's suggestions. What if a county, McLean County, for a period of 20 years, always purchased a policy which covered malicious prosecution? If they get sued for malicious prosecution, you think, one of these policies has got to apply. One's got to provide coverage. But it's possible that none will provide coverage. If, for instance, the policy, in effect, when the arrest was made, contained language defining malicious prosecution on the basis of offense or tort, it wouldn't apply. Because the tort has not occurred when the arrest takes place. It only ripens when the exoneration takes place. If the policy, in effect, at the time of the exoneration, defines malicious prosecution in terms of an act, there's no coverage there either because the act occurred in the early policy period. So here we have a public entity who has done its duty and bought coverage for malicious prosecution every year for all relevant years, yet when they're presented with a claim for malicious prosecution, the insurance companies are doing like this and they have no coverage. So I think public policy can have an effect in this case, or can have a role in this case, especially with the coverage here today, and especially when at least some of the holdings defining or stating that malicious prosecution occurs when the original arrest is made and not when the exoneration takes place are sort of based on public policy themselves, a flawed public policy, I would think. It is a much different situation for malicious prosecution if a person is wrongfully imprisoned overnight in jail. Certainly, if that happens, they are entitled to some compensation. But the full tort doesn't ripen, doesn't become apparent, isn't capable of being valued until exoneration takes place. A 13-year imprisonment in the Department of Corrections is a lot different than overnight in the Sangamon County Jail or the McLean County Jail. So I think on that basis, looking solely at the conduct at the time the original allegedly prosecution was started, it's saying that's it, it's all over at this point. That is unrealistic and doesn't have any impact on the reality of this situation in which both the duration and the conditions of confinement are very important in valuing what the claim is worth. After all, the purpose of a tort claim is the exchange of money. So I think to reach the point where you can adequately value the tort kind of raises questions as to a lot of these cases. They just use the date of arrest as a date where everything is done, because it's not done. So Mr. Robb, tell me why Indian Harbor doesn't come in this case. The reason why, because it's been through a law enforcement policy which defines the tort on the basis of conduct, not of offense. That's the big distinction. But the policy at issue in this case doesn't refer to offense other than as a creature of personal injury. It's personal injury which governs this case. And you keep talking about offense, and that term isn't the term. It requires both to occur. No, it doesn't. It talks about personal injury. Personal injury caused by an offense. You have to have both under that language. What language are you using? Point out that language. I'm referring, Your Honor, to it's cited on page 15 of my brief. It is section O of the policy. And I'll read it leaving some of the – it says personal injury means injury caused by one or more of the following offenses. Yes, you have to have injury. That's required for every tort. But it focuses on personal injury. But it requires to be caused by an offense. It could be caused by one or more of the following. You don't even need the term offenses in there for that paragraph to be meaningful, do you? Well, it includes the term here. Well, maybe they would have been better off leaving it off. If that term weren't there, it wouldn't add anything to what the term personal injury means. But if it's during a policy, you can't. Counsel, can you understand my question? I did understand your question. My question was, would that change if the term offenses wasn't even in that sentence? It wouldn't change its meaning at all, would it? You're ending the sentence. Personal injury means injury caused by one or more of the following colon. One, two, three, four, five. It wouldn't change it at all, would it? It depends on how you look at it. I would argue it would change it. You don't need it for that to be a meaningful paragraph, do you? You don't need it, but it's there. Because you're defining the term personal injury, not defining the term offenses, which at best might be an additional characterization. But, Your Honor, it includes that language. The court is not free to ignore language just because it's grammatically unnecessary. It's like the exception swallowing the rule. You're saying ignore personal injury, which is being defined here, and focus solely on the term offenses, which isn't even necessary. No, I'm not, Your Honor. I'm suggesting the entire language chosen by the insurance carrier must be the truth. Whether it could be written a different way using different language, fine. But that's not the language we're talking about, Your Honor. We're talking about the language actually in the policy. Your Honor, the court, the long possible tail of the court of militia prosecution, has been existing for decades. If insurance carriers only wanted to cover militia prosecution, where the initial prosecution occurred within the policy period, why has that not been changed? Why is not militia prosecution, if the prosecution occurred during the policy period? Why are we, 20 years after the last major Supreme Court case on the issue, still fighting over this point? It's because the insurance companies have allowed this ambiguity to exist, kind of a systematic ambiguity rather than a structural ambiguity contained in the particular language of this policy. But it does seem, given that my homeowner policy has a five-page exclusion, if I somehow release nuclear energy, it's a little surprising that this issue has not been addressed and clarifies we are continually fighting over this issue. Some 30 years after the Supreme Court made clear its honorable requirement. Does the court have any other questions? I'm about out of time, but I may have a couple of seconds left. Thank you. Thank you, Mr. Brown. Mr. Rice, Senate Rebuttal. I wanted to take this opportunity just to touch upon two points that the appellees have raised. One that I think is very important to understand in terms of insurance, generally speaking. The notion of insurance is that we're covering some type of fortuitous event. Something unexpected happens that we're going to provide coverage for. The argument advanced by my opponent would allow an insurer to take away that element of the process, fortuity, because as a simple example, it may show that point. If, for example, the county of McLean had determined that in 2008 they were going to release Mr. Beaman, but they weren't sure whether or not they were going to prosecute him further or whether they were simply going to exonerate him, they would have the opportunity at that point to purchase insurance coverage for the upcoming event, which would be exoneration. And by doing that, they would remove the element of fortuity from that coverage, because they would know that in the next policy period, the triggering event for coverage is going to be the exoneration. And again, insurance companies cover fortuity, not certainties. So if you know an event is going to happen, you're not allowed to procure insurance for it. So the problem with advocating the exoneration as the trigger for malicious prosecution is it takes away, it provides an opportunity to take away the element of fortuity in the insurance policy. It also kind of dovetails nicely with the arguments that we raised with respect to Northfield, the Seventh Circuit decision. Northfield, ironically, struggled in some sense to apply the McFatridge test about when exoneration, or when the triggering event for malicious prosecution occurs. Because again, we kept talking today about exoneration because exoneration was the event in this instance. But the tort of malicious prosecution requires the favorable termination of the proceeding in favor of the criminal defendant. There's a lot of acts that take place around that time period that Northfield struggled with. Is it the release from prison? Is it the decision by the state to not re-prosecute? Is it ultimately the certificate of innocence that's issued? And because all those dates can change, and they can change into different policy periods, it doesn't make for a very good test to use those dates as the date of the trigger. What is clear and rooted in stone is the date the criminal was arrested, the date he or she was convicted. Those dates can't change. They're done. The insured has the opportunity at the back end of the case, 20, 30 years later, to have some control over what those dates are and procure insurance to correspond. And that's why, again, applying the McFatridge, the Northfield analysis, just isn't a useful test for determining when there's coverage for malicious prosecution. There was somewhat of an argument made with respect to if we don't apply the analysis of the trigger being exoneration today, that it's going to be a situation where the county may have bought a policy 20 years earlier and the insurance companies are pointing the finger because the language keeps changing. Well, that's somewhat circular because the language changes all the time. And ruling that today's language is good for exoneration doesn't help us with whatever the language was 20 years ago. So that circular argument doesn't really work. What does work is to say that the triggering event for a malicious prosecution claim is the date of incarceration and the false arrest. Because everybody's policies cover that event under a definition of personal injury. And again, it's very imperative to note, as the Court has noted, that this policy covers injury. Not torts, not offenses, but injury. And the only personal injury that happened to Mr. Beamon, at least with respect to the coverage, is concerned, is when he was incarcerated, arrested, and maliciously prosecuted.  And for those reasons, Your Honor, I respectfully request that this Court reverse the judgment of the Circuit Court entering judgment in favor of states. And I thank you for your time. Thank you, Counsel. This Court will be in recess and will take this matter under advisement.